UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X          <u>For Online Publication Only</u>

JERRY FINCH


                                    Plaintiff,

                                                                             <u>**MEMORANDUM & ORDER**</u>
                  -against-                                                  15-CV-6541

CAROLYN W. COLVIN,
*Acting Commissioner of Social Security*,


                                    Defendant.
-----------------------------------------------------------------X

**APPEARANCES:**

Diane Monaco McClernon
Nassau/Suffolk Law Services Committee, Inc.
1757 Veterans Hwy, Suite 50
Islandia, NY 11749
          *Attorney for Plaintiff*

Joseph Anthony Marutollo
United States Attorney's Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201
          *Attorney for Defendant*

**AZRACK, United States District Judge:**

          Plaintiff Jerry Finch challenges the decision of the Acting Commissioner of Social

Security, who concluded, after a hearing before an Administrative Law Judge, that plaintiff is not

disabled for purposes of receiving disability insurance benefits under Title II of the Social Security

Act.  The case is before the Court on the parties' cross-motions for judgment on the pleadings.  For

the reasons discussed herein, plaintiff's motion for judgment on the pleadings is GRANTED, the

Commissioner's cross-motion for judgment on the pleadings is DENIED, and the case is

REMANDED for proceedings consistent with this opinion.

## I.  BACKGROUND

Plaintiff is a 55 year-old man alleging disability due to back and knee pain, asthma, high blood pressure and borderline intellectual functioning and reading delays.  The issue in this case is whether there is substantial evidence to support the conclusion that plaintiff is not disabled for purposes of receiving disability insurance benefits under Title II of the Social Security Act.

On June 29, 2012, plaintiff filed for disability insurance benefits and supplemental security income with the Social Security Administration ("SSA").  (Administrative Transcript ("Tr.")  61.) Plaintiff alleged his disability began on June 17, 2009.  (Tr. 99.)  On December 13, 2012, the SSA initially denied plaintiff's application.  (Tr. 65–67.)  In May 2012, plaintiff appeared at a hearing before Administrative Law Judge ("ALJ") Bruce MacDougall.  At that hearing, plaintiff testified in person.  (Tr. 37–60.)

On July 16, 2014, the ALJ found that plaintiff was not disabled.  (Tr. 20-33.)  In August 2013, the Appeals Council denied review of the ALJ's decision, and plaintiff filed this action pursuant to 42 U.S.C. § 405(g).  (Tr. 1–6.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on September 18, 2015.  (Tr. 1-6.)

Plaintiff's counsel notified the Court on November 15, 2016 that plaintiff was awarded Supplemental Security Income benefits on a subsequent application on October 7, 2015.

## II. DISCUSSION

### A.  __Standard of Review__

A district court reviewing a final decision of the Commissioner must determine "whether the correct legal standards were applied and whether substantial evidence supports the decision." Butts v. Barnhart, 388 F.3d 377, 384 (2d Cir. 2004) as amended on reh'g in part, 416 F.3d 101 (2d

2

Cir. 2005). The Commissioner's factual findings must be upheld if there is substantial evidence in the record to support them. 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citation omitted). "Although factual findings by the Commissioner are 'binding' when 'supported by substantial evidence,' '[w]here an error of law has been made that might have affected the disposition of the case,'" the court will not defer to the ALJ's determination. Pollard v. Halter, 377 F.3d 183, 188–89 (2d Cir. 2004). Thus, "[e]ven if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." Ellington v. Astrue, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (quoting Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987)).

**B. Plaintiff's Challenge to the ALJ's Determinations Concerning Listing 12.05**

At step two of the sequential analysis, the ALJ found that plaintiff had the following severe impairments: "cervical disc syndrome and lumbar disc syndrome and knee impairment." (Tr. 25.) At step three, The ALJ determined that plaintiff's mental impairments did not meet or medically equal the requirements set forth in paragraphs A-D of 20 C.F.R. Part 404, Subpart P, App. 1, § 12.05 ("Listing 12.05.") (Tr. 25-27.) Of relevance to this appeal, the ALJ found that the requirements of Paragraph B were not met because the ALJ concluded that Mr. Finch does not have a valid verbal, performance or full scale IQ of 59 or less. (Tr. 26.) The ALJ further found that Paragraph C was not met because plaintiff "does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." (Id.)

3

Plaintiff argues that the ALJ erred when he determined that the requirements of Paragraphs B and C of Listing 12.05 were not met, and argues that plaintiff fulfilled the requirement of Listing 12.05 that there be deficits in adaptive functioning which manifested before age 22, as evidenced by plaintiff's school records demonstrating his difficulty performing school work, and inappropriate social behavior. (Pl. Br. 7-8; Tr. 26, 420.) As explained below, the Court agrees with plaintiff and finds that remand is required.

Dr. Kathleen Acer, who conducted a psychological and intellectual assessment of plaintiff on behalf of the Suffolk County Department of Social Services in February 2010, found that plaintiff had a full scale IQ of 61, a working memory IQ of 66 and a processing speed IQ of 68. (Tr. 251.) Dr. Acer, however, also found a verbal comprehension IQ of 58. (Id.)

Although the ALJ afforded "great weight" to Dr. Acer's opinion, (Tr. 29), the ALJ erroneously stated Mr. Finch does not have a valid verbal, performance, or full scale IQ of 59 or less in determining that plaintiff failed to meet the requirements of Paragraph B of Listing 12.05. As noted, Dr. Acer opined that plaintiff had a verbal comprehension IQ of 58. (Tr. 251.)

Additionally, in considering Paragraph C of Listing 12.05, the ALJ mentioned Mr. Finch's full scale IQ scores, but did not also address whether he had a "physical or other mental impairment imposing an additional and significant work-related limitation of function," as required by Paragraph C. (Listing 12.05(C).) The ALJ failed to address any of plaintiff's physical impairments and resulting work-related limitations in making his determination. (Tr. 25.) Finally, it does not appear that the ALJ made any finding as to whether plaintiff exhibited "significantly subaverage general intellectual functioning with deficits in adaptive functioning," as required by the introductory paragraph of Listing 12.05. (Def. Br. at 20-21.) In light of the points above, the Court concludes that the existing record does not support the ALJ's decision and that the ALJ

4

failed to make necessary findings in determining that plaintiff was not disabled pursuant to Step three of the sequential analysis.  Remand is therefore necessary on this basis.

**C.  Plaintiff's Challenge to the ALJ's Credibility Findings and RFC Determination**

As noted earlier, at step two of the sequential analysis, the ALJ found that plaintiff had the following severe impairments: "cervical disc syndrome and lumbar disc syndrome and knee impairment."  (Tr. 25.)  At steps four and five of the sequential analysis, the ALJ determined that the plaintiff has no past relevant work and that:

> [he had the RFC to perform] the full range of medium work as defined in 20 CFR 416.967(c).  [He] can sit and stand/walk six hours in an eight-hour day and lift/carry twenty-five pounds frequently and fifty pounds occasionally.  [He] would be limited to other than detailed instructions and complex tasks; but can perform simple 1-2 part instructions and simple tasks.

(Tr. 27.)  In addition, the ALJ found that considering plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that plaintiff can perform.  (Tr. 30.)

Plaintiff disputes the ALJ's RFC determination, arguing that the ALJ erred in evaluating the medical opinion evidence, and should have given greater weight to the opinion of Physician Assistant Richard Bennett.  (Pl. Br. 10; Tr. 395.)  Plaintiff also argues that the ALJ's RFC determination is inconsistent with the record in other respects.  (Pl. Br. at 13.)

An RFC determination specifies the "most [a claimant] can still do despite [the claimant's] limitations."  Barry v. Colvin, 606 F. App'x 621, 622 n.1 (2d Cir. 2015) (summary order); see Crocco v. Berryhill, No. 15-CV-6308 (MKB), 2017 WL 1097082, at *15 (E.D.N.Y. Mar. 23, 2017) (stating that an RFC determination indicates the "nature and extent" of a claimant's physical limitations and capacity for work activity on a regular and continuing basis) (citing 20 C.F.R. § 404.1545(b)).  In determining a claimant's RFC, "[t]he Commissioner must consider objective

5

medical evidence, opinions of examining or treating physicians, subjective evidence submitted by the claimant, as well as the claimant's background, such as age, education, or work history." Crocco, 2017 WL 1097082, at *15; see also Barry, 606 F. App'x at 622 n.1 ("In assessing a claimant's RFC, an ALJ must consider 'all of the relevant medical and other evidence,' including a claimant's subjective complaints of pain.") (quoting 20 C.F.R. § 416.945(a)(3)).  An RFC determination must be affirmed on appeal when it is supported by substantial evidence in the record.  Barry, 606 F. App'x. at 622 n.1.  However, "[i]f the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." Martinez v. Astrue, No. 06–CV–6219, 2010 WL 331694, at *9 (S.D.N.Y. Jan. 28, 2010) (citing Social Security Ruling 96–8p, 1996 WL 374184, at *6 (S.S.A. July 2, 1996)).

The record in this case includes notations by Dr. Carla Weber.  While the record indicates that plaintiff was a patient at Dr. Weber's office from August 27, 2012 to March 11, 2014 (Tr. 303-312), it appears that Dr. Weber also examined plaintiff in September 2009 and made an assessment in an Estimated Physical Capabilities Form that plaintiff could "never" lift or carry 21-50 pounds, and could only "occasionally" lift or carry 11-20 pounds.  (Tr. 412.)  Physician Assistant Richard Bennett ("PA Bennett") of Dr. Weber's office corroborated this assessment in June 2016, opining in a Treating Source Statement Questionnaire that plaintiff could only occasionally lift or carry up to 20 pounds and could never carry 50 pounds.  PA Bennett also noted that plaintiff could walk about 5 blocks, sit or stand for about 30 minutes at a time, would need to take unscheduled breaks during the work day and could only work two hours in an eight-hour work day.  (Tr. 394, 395.)

Plaintiff was also treated by Dr. John Ricciardelli of Choice Spine, Joint and Neurology ("Choice Spine") from August 2012 through May 2014.  (Tr. 314-393.)  Dr. Ricciardelli's

treatment notes report consistent complaints of neck pain and back pain.  (Id.)  Dr. Ricciardelli diagnosed plaintiff with cervical disc syndrome and lumbar disc syndrome, as well as right knee osteoarthritis.  (Tr. 330.)  Plaintiff also saw Dr. P. R. Tipirneni from Choice Spine in 2012.  Examinations of plaintiff's lumbar spine revealed limited ranges of motion.  Some examples of these limitations, determined by an examination done on August 14, 2012, showed flexion was 45/60, extension was 10/25, left rotation was 10/30 and right and left lateral bending was 10/25 with pain.  Straight leg raise test was positive bilaterally.  (Tr. 315.)  These findings by Dr. Tipirneni and Dr. Ricciardelli were made over a two-year span of treatment.

Dr. Andrea Pollack performed a one-time consultative examination in connection with plaintiff's application for benefits on September 12, 2012.  (Tr. 231-34.)  Dr. Pollack opined that plaintiff had only a mild restriction in bending, a moderate restriction in squatting; and mild to moderate restrictions in lifting, carrying, pushing, and pulling.  Dr. Pollack recommended that plaintiff avoid smoke, dust, and known respiratory irritants and activities which require heavy exertion.  (Tr. 234.)

At the hearing, plaintiff testified as to his pain and physical limitations.  (Tr. 39-60.)  He testified that he could lift a gallon of milk, but could not walk with it.  (Tr. 58.)  Plaintiff stated that he did not have problems cooking, cleaning and performing laundry because he did not "have to walk up no stairs," to perform these tasks.  (Tr. 47.)  He also testified that he "[doesn't] cook that much" and that he would "sit down" while he cooks.  (Tr. 53.)

The record further contains plaintiff's various X-ray and MRI results.  X-rays of plaintiff's knees taken in June 2012 showed mild to moderate tricompartmental degenerative changes.  (Tr. 280.)  X-rays of his cervical spine taken in June 2012 showed loss of normal cervical lordosis, degenerative changes with bilateral neural foraminal narrowing.  (Tr. 277.)  An MRI of the lumbar

spine done in August 2012 found an L4-L-5 disc bulge, herniation and degenerative changes resulting in moderate spinal canal, moderate right and mild left neural foraminal stenosis. (Tr. 281). An MRI of the cervical spine done in August 2012 revealed loss of normal cervical lordosis, C2-C3 and C4-C5 neural foraminal stenosis and C5-C6 disc herniation resulting in effacement of the thecal sac. (Tr. 283, 285.) X-rays in December 2013 of both shoulders showed moderate hypertrophy on the left side. (Tr. 276.) A right shoulder MRI performed in December 2013 showed partial tearing and moderate hypertrophy, marrow edema and mild bursitis. (Tr. 284.)

In his decision, the ALJ afforded little weight to the opinion of PA Bennett, the physician's assistant, reasoning that his opinion was "not consistent with the diagnostic testing or supported by clinical findings contained in the record." (Tr. 28.) In making his RFC determination, the ALJ also reasoned that "diagnostic testing showed only mild to moderate findings" and relied on plaintiff's testimony that he engaged in "a wide range of activities of daily living including cooking, cleaning and shopping." (Tr. 28.) The ALJ afforded "some weight" to the opinion of Dr. Pollack in deciding that the plaintiff was capable of performing medium work. (Tr. 29.)

However, in making his determination, the ALJ failed to account for the assessment of Dr. Weber, who opined that plaintiff could not lift or carry 21-50 pounds, and could only "occasionally" lift or carry 11-20 pounds. (Tr. 412.) Although it is unclear whether Dr. Weber was plaintiff's treating physician at the time she made her September 2009 assessment, given that PA Bennett's opinion supported that of Dr. Weber, the ALJ should have at least addressed and considered Dr. Weber's opinion. Accordingly, remand is warranted for the ALJ to explicitly address Dr. Weber's opinion.

In addition, the ALJ failed to explain what evidence in the record supports his RFC determination. As noted, the ALJ afforded some weight to Dr. Pollack, plaintiff's consultative

examiner, who opined that plaintiff only had certain "mild" and "moderate" exertional limitations; little weight to PA Bennett; and great weight to Dr. Acer, who only conducted a mental examination of plaintiff.  (Tr. 28-29.)  In his decision, the ALJ also lists plaintiff's medical treatment history and diagnoses at Choice Medical, as well as his MRI and X-ray results.  (Tr. 28.) It is not clear from the ALJ's decision what medical evidence in the record supports his RFC determination.  Specifically, it is not clear what evidence supports the ALJ's finding the plaintiff could lift up to 50 pounds and frequently lift and carry 25 pounds.  See 20 C.F.R. § 404.1567(c). In fact, other evidence in the record, including the notations of Dr. Weber, and opinion of PA Bennett contradicts such a conclusion.  (Tr. 394-95; 412.)  See White v. Sec'y of Health & Human Servs., 910 F.2d 64, 65 (2d Cir.1990) ("failure to specify the basis for a conclusion as to residual functional capacity is reason enough to vacate a decision of the Secretary.").  Remand is therefore also warranted on this basis.

Further, plaintiff argues that the ALJ erred in ignoring plaintiff's non-exertional limitations, such as plaintiff's asthma, in making his RFC determination. (Pl. Br. at 12; Pl. Reply at 7-8.)[1]  The ALJ did not take into account or make specific findings as to plaintiff's alleged non-exertional limitations and did not address the evidence in the record, including plaintiff's diagnosis of asthma (Tr. 216, 231, 308), and the opinions of Dr. Pollack and Dr. Weber that plaintiff should avoid smoke, dust, fumes, gases and respiratory irritants.  (Tr. 234; 412.)  Remand is further warranted for this reason.

Finally, the ALJ found plaintiff's statements concerning the "intensity, persistence and limiting effects of [his] symptoms . . . not entirely credible" based on his analysis.  (Tr. 28.)  In

---

[1] Plaintiff frames this argument as an error at step 5 of the sequential analysis, reasoning that the ALJ should not have relied on the Commissioner's Medical-Vocational Guidelines in determining that plaintiff has the capacity to work, and should instead have elicited vocational expert testimony.  However, the Court believes the ALJ's consideration of plaintiff's non-exertional limitations is more appropriately addressed in the ALJ's RFC determination.

assessing the credibility of a claimant's statements, "an ALJ must consider, inter alia, the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes to alleviate the pain or other symptoms; and any treatment, other than medication, the claimant receives or has received." Calabrese v. Astrue, 358 F. App'x 274, 278 (2d Cir. 2009). The ALJ did not identify sufficiently specific reasons why plaintiff's testimony is not credible, nor did the ALJ sufficiently identify what portion of plaintiff's testimony he did or did not credit. (Tr. 28.) On remand, the ALJ should also make new findings concerning plaintiff's credibility and RFC that address the deficiencies identified above.

## III. CONCLUSION

For the reasons set forth above, the Court GRANTS plaintiff's motion for judgment on the pleadings, DENIES Commissioner's motion for judgment on the pleadings and REMANDS for proceedings consistent with this opinion. Specifically, on remand, the ALJ should:

(1) make new findings related to step three in determining whether plaintiff is disabled;

(2) depending on his findings at step three, reevaluate the evidence on the record and reconsider plaintiff's RFC in accordance with pages 5-10 of this opinion; and

(3) in light of the Court's decision, reevaluate his credibility determination of plaintiff's testimony.

**SO ORDERED.**

Dated: June 21, 2018
Central Islip, New York

                      /s/ JMA
                      JOAN M. AZRACK
                      UNITED STATES DISTRICT JUDGE